IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

LEON J., JR.,                          )
                                       )
    Plaintiff,                     )
                                       )
v.                                     )        No. 24-cv-1264-TMP
                                       )
COMMISSIONER OF                        )
SOCIAL SECURITY,                       )
                                       )
    Defendant.                     )
                                       )

---

### ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

---

On December 23, 2024, Leon J., Jr. ("Plaintiff") filed a complaint seeking judicial review of a social security decision.[1] Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI disability benefits. (ECF Nos. 1, 15.) For the following reasons, the decision of the Commissioner is AFFIRMED.

### I.    BACKGROUND

On February 6, 2020, Plaintiff filed his application for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 404-434. (ECF No. 9 at PageID 43.)

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on March 3, 2025, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10.)

This is Plaintiff's second application for benefits, having previously filed an application on March 15, 2015, which was ultimately denied by an Administrative Law Judge ("ALJ") on July 20, 2018. (Id. at PageID 109, 117.) In light of his previously denied application, Plaintiff asserts an onset of disability from January 20, 2020. (Id. at PageID 52.)

Regarding the instant application, Plaintiff's claim was initially denied on April 20, 2021, and was again denied upon reconsideration on January 3, 2023. (Id. at PageID 43.) His request for reconsideration was denied on September 23, 2022, after which Plaintiff requested a hearing before an ALJ. (Id.) The hearing was held telephonically before an ALJ on August 25, 2023. (Id.) The ALJ issued his written decision denying benefits on January 22, 2024. (Id. at PageID 43-60.) Plaintiff then filed his request for review with the Appeals Council on February 5, 2024, and it was denied on November 14, 2024. (Id. at PageID 18-22.) Plaintiff appealed the matter to this court on December 23, 2024. (Id.) Due to the denial of the Appeals Council to hear Plaintiff's appeal, the January 22, 2024 decision of the ALJ denying benefits represents the final decision of the Commissioner. (ECF No. 1.)

Plaintiff alleges that he is disabled because of obesity; asthma; sleep apnea; diabetes mellitus; neuropathy; chronic obstructive pulmonary disease ("COPD"); bipolar disorder; unspecified depression, affective disorder; and anxiety disorder.

- 2 -

(ECF No. 9 at PageID 46.) After considering the record and the testimony given at the hearing, the ALJ used the Act's required five-step analysis to conclude that Plaintiff is not disabled for the purposes of receiving Title XVI benefits. (Id. at PageID 43-60.)

At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 6, 2020. (Id. at 46.) At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity; asthma; sleep apnea; diabetes mellitus; neuropathy; unspecified depression, affective disorder; and anxiety disorder. (Id.) The ALJ then found at step three that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926)." (Id.)

The ALJ took each impairment in turn. Of note, he stated that there is no listing for obesity. (Id. at PageID 46-47.) He noted that pursuant to SSR 19-2p, the Plaintiff's "obesity was considered as a factor in meeting or equaling one of the Listings[.]" (Id. at PageID 46.) Despite this, he concluded that Plaintiff "fails to meet or medically equal any listings related to obesity, or any of the other listings in Appendix 1." (Id. at PageID 46-47.) He then noted that "even considering [Plaintiff's] obesity, the record fails to show ineffective ambulation as it is defined in section

1.00B2b. Likewise, no treating, examining, or reviewing physician identified findings equivalent in severity to the criteria of any musculoskeletal, respiratory, or cardiovascular listings." (Id. at PageID 47.)

The ALJ went on to consider Plaintiff's diabetes mellitus, COPD, asthma, and neuropathy, and, noting the requirements for each to be considered "severe," found that "none of the conditions, considered singly or in combination, manifests symptoms rising to any of the necessary thresholds set out above or elsewhere in the disability program." (Id.) Then, considering Plaintiff's mental health conditions, the ALJ found that the "severity of the [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04 and 12.06." (Id.)

The ALJ then concluded that Plaintiff had "the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c)" with "additional limitations of frequent handling and fingering; need to avoid concentrated exposure to hazards, extreme temperatures, and pulmonary irritants and inhalants; and simple tasks and instructions." (Id. at PageID 51, 57.) In coming to this conclusion, the ALJ first considered "whether there is an underlying medically determinable physical or mental impairment(s)" and then evaluated the "intensity, persistence, and limiting effects of the [Plaintiff's] symptoms to determine the

extent to which they limit the [Plaintiff's] work-related activities." (Id. at PageID 52.)

The ALJ first reviewed the alleged disabilities, which included an indication that Plaintiff "was 5'1" and 230 pounds, which translates to a Body Mass Index ("BMI") of 43.5 . . . [which] falls within the range of Level III obesity[.]" (Id.) He then reviewed medical records from before Plaintiff's alleged disability onset date of January 20, 2020, as well at the Plaintiff's prior disability benefits decision. (Id. at PageID 52-53.) Beginning with several hospital and doctor's visits that occurred before January of 2020, the ALJ noted that the Plaintiff had a BMI over 40 and was described as having either diabetic ketoacidosis or impending diabetic ketoacidosis; diabetes mellitus, type 2, with hyperglycemia; and COPD. (Id. at PageID 53-54.)

After the period of alleged disability began, the ALJ noted that the Plaintiff was discharged from a February 2020 hospital stay with the following diagnoses: "diabetes mellitus with hyperglycemia; morbid obesity; history of asthma; [and] history or obstructive sleep apnea[.]" (Id. at PageID 54.) Then, he noted that in an April 2021 follow-up "it appear[ed] that the [Plaintiff] exhibited essentially normal overall appearance at the time[.]" (Id. at PageID 54-55.) It was also indicated that in November of 2021, Plaintiff had a BMI of 53.21, and that a month later,

Plaintiff "requested medical release back into work[.]" (Id. at
PageID 55.) By early 2022, there was "evidence of continued
noncompliance" with treatment. (Id.)

The ALJ then considered Plaintiff's mental functioning,
stating that although Plaintiff was diagnosed with bipolar
disorder and generalized anxiety disorder in 2016, he "exhibited
a wholly normal mental status at the time." (Id.) The ALJ stated
that even though Plaintiff sought therapy in May of 2020
"attest[ing] ongoing audiovisual hallucinations[,]" he "re-
exhibited grossly normal mental status . . . , including with
respect to . . . personal hygiene; attention; concentration;
impulse control; insight; intellect; judgment; memory;
orientation; interpersonal conduct; speech; thought content; and
thought processes[.]" (Id.) Through May of 2022, Plaintiff was
largely considered stable, although there was "some visibly self-
harming [thoughts] and behaviors in December of 2021[.]" (Id. at
PageID 56.) Nonetheless, by May of 2022, Plaintiff was
"specifically described as being in wholly stable condition[.]"
(Id.)

The ALJ then considered the opinions of several physicians,
noting that "no treating or examining source provided a statement
regarding the [Plaintiff's] functional capacity." (Id.) The
Plaintiff underwent a "consultative psychological examination in
November 2022 with examining physician, James Cowie, Psy.D." (Id.)

"Dr. Cowie questioned the [Plaintiff's] reliability and noted that '[t]he [Plaintiff] did not appear to put forth effort on mental status examination tasks,' and that 'he appeared to exaggerate disfunction[.]'" (Id.) Dr. Cowie thus concluded that "impairment ratings [could] not be determined[.]" (Id. at PageID 56-57.)

In April 2021, the time of the initial consideration, "State agency consultant Robert Gilmore, M.D., reviewed the [Plaintiff's] record and determined that the [Plaintiff] had to avoid concentrated exposure to . . . fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants; and hazards[.]" (Id. at PageID 57.) Finding Dr. Gilmore's opinion only "somewhat persuasive[,]" the ALJ concluded that "[p]articularly when considered in combination with [Plaintiff's] longstanding obesity, [he found] that the [Plaintiff] more than reasonably has at least some degree of exertional limitations[.]" (Id.) The ALJ then considered one more consulting physician who examined the Plaintiff's records and also concluded that there was "insufficient evidence in the record to reach any conclusion regarding the [Plaintiff's] physical functioning[.]" (Id.) Ultimately, the ALJ concluded that:

> [i]n sum, the medical evidence of record in its entirety demonstrates that the [Plaintiff] has the following sever impairments: obesity; asthma; sleep apnea; diabetes mellitus; neuropathy; unspecified depression, affective disorder; and, anxiety disorder . . . [and] is restricted to a medium range of work activity with additional limitations of frequent handling and

- 7 -

fingering; need to avoid concentrated exposure to
hazards, extreme temperatures, and pulmonary irritants
and inhalants; and simple tasks and instructions.

(Id.) Thus, Plaintiff's residual functional capacity ("RFC") was
found to be medium work with the previously listed restrictions.
(Id. at PageID 51.)

Finally, at the fifth step, the ALJ considered that although
Plaintiff had restrictions on what work he can perform, "the
vocational expert testified that the [Plaintiff] would remain
capable of performing all of his past relevant jobs, both as
actually and generally performed in the national economy." (Id. at
PageID 58.) He found that there are also "other jobs that exist in
significant numbers in the national economy that the [Plaintiff]
can also perform, considering the [Plaintiff's] age, education,
work experience, and residual functional capacity[.]" (Id.) In
conclusion, the ALJ found that Plaintiff "has not been under a
disability, as defined in the Social Security Act, since February
6, 2020, the date the application was filed[.]" (Id. at PageID
60.)

## II.    ANALYSIS

### A.    Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial
review of any final decision made by the Commissioner after a
hearing to which they were a party. "The court shall have power to
enter, upon the pleadings and transcript of the record, a judgment

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Hum. Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs.,

893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial burden is on the claimant to prove they have a disability as defined by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir. 1990). If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a five-step sequential analysis set forth in the Social Security Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be engaged in substantial gainful activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be made that the claimant suffers from a severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the ALJ determines whether the impairment meets or equals the severity criteria set forth in the Listing of Impairments contained in the Social Security Regulations. See id. §§ 404.1520(d), 404.1525,

404.1526. If the impairment satisfies the criteria for a listed
impairment, the claimant is considered to be disabled.

On the other hand, if the claimant's impairment does not meet
or equal a listed impairment, the ALJ must undertake the fourth
step in the analysis and determine whether the claimant has the
RFC to return to any past relevant work. See id. §§
404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the
claimant can return to past relevant work, then a finding of "not
disabled" must be entered. Id. But if the ALJ finds the claimant
unable to perform past relevant work, then at the fifth step the
ALJ must determine whether the claimant can perform other work
existing in significant numbers in the national economy. See id.
§§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further
review is not necessary if it is determined that an individual is
not disabled at any point in this sequential analysis. Id. §
404.1520(a)(4).

C.    **Substantial Evidence in Support of the RFC and Articulation
      of the Effects of Obesity**

Plaintiff argues that the ALJ's finding that Plaintiff had an
RFC to perform medium work is not supported by substantial
evidence. (ECF No. 14 at PageID 2092.) He primarily asserts that
the ALJ did not have substantial evidence because he "failed to
adhere to Social Security Ruling 19-2p, *Evaluating Cases Involving
Obesity*." (Id.) Plaintiff states that under SSR 19-2p, the ALJ was

required "to discuss what effect obesity has upon the Plaintiff's
ability to perform routine movement and necessary physical
activity within the work environment." (Id. at PageID 2093-94.)

Social Security Rulings are "binding on all components of the
Social Security Administration." 20 C.F.R. § 402.35(b)(1). They
constitute "public precedential decisions" relating to the
Administration's interpretations of law and regulations and
dictate how certain laws and regulations are applied. Social
Security Ruling 19-2p, 2019 SSR LEXIS 2, at *1 (May 20, 2019).
Both Plaintiff and the government agree that SSR 19-2p, 2019 SSR
LEXIS 2, which articulates how the Administration establishes
"that a person has a medically determinable impairment of obesity
and how [they] evaluate obesity in disability claims under Titles
II and XVI of the Social Security Act," applies. Id. SSR 19-2p,
2019 SSR LEXIS 2 requires an ALJ to "consider the limiting effects
of obesity when assessing a person's RFC." 2019 SSR LEXIS 2 at
*12. The Ruling notes that "the combined effects of obesity with
another impairment(s) may be greater than the effects of each of
the impairments considered separately" and requires ALJs to
"explain how [they] reached [their] conclusion on whether obesity
causes any limitations." Id.

Where a plaintiff disagrees that the analysis of obesity is
adequate, they must further meet the "burden of showing
specifically how [their] obesity, in combination with other

- 13 -

impairments, limited [their] ability to a degree inconsistent with the ALJ's RFC." Lumpkin v. Comm'r of Soc. Sec., No. 20-CV-1849, 2021 U.S. Dist. LEXIS 208622 at *7. Plaintiff argues that "the ALJ merely stat[ing] that, 'Pursuant to SSR 19-2p, the [Plaintiff's] obesity was considered as a factor in meeting or equaling one of the Listings below' . . . fail[s] to adequately explain the impact of Plaintiff's Obesity on either routine movements or necessary work activities, as required by SSR 19-2p and in failing to adequately explain the impact of Plaintiff's obesity on the RFC finding." (ECF No. 14 at PageID 2093-94.)

In the analysis of Plaintiff's medical history to determine his RFC, it is clear the ALJ followed the commands of SSR 19-2p, 2019 SSR LEXIS 2. The ALJ posited:

> In considering the [Plaintiff's] symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the [Plaintiff's] pain or other symptoms.
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the [Plaintiff's] pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

- 14 -

(ECF No. 9 at PageID 52.)

In his analysis of the Plaintiff's medical evidence, the ALJ specifically acknowledged that Plaintiff's obesity was a severe impairment, meaning that it "significantly limit[ed] [Plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). The ALJ assessed the impact of Plaintiff's obesity in the section of the decision justifying his RFC finding. He clearly considered obesity and SSR 19-2p because he referenced the Plaintiff's obesity and body mass index ("BMI") m2ultiple times. (See ECF No. 9 at PageID 52-54; 57.) He acknowledges that Plaintiff's obesity contributes to Plaintiff's limitations. He stated that "[p]articularly when considered in combination with [Plaintiff's] longstanding obesity, the undersigned finds that the [Plaintiff] more than reasonably has at least some degree of exertional limitations[.]" (Id. at PageID 57.) Finally, after listing obesity as one of Plaintiff's severe impairments, the ALJ stateD that "[c]onsequently, the [Plaintiff] is limited to a medium range of work activity with additional limitations[.]" (Id.)

This is a clear conclusion that even considering Plaintiff's obesity along with his other severe impairments, Plaintiff has an RFC of medium work with some limitations. (See id.) SSR 19-2p, 2019 SSR LEXIS 2 merely requires that obesity be considered, and that the conclusion reached regarding its effects be explained.

Here, the ALJ recognized that Plaintiff's obesity caused some
limitations but explained why it did not interfere with his
capacity for medium level work.

Plaintiff has not made any argument about how his obesity in
combination with other symptoms limited his ability more than the
ALJ's RFC determination. The ALJ here already indicated that he
acknowledged and weighed the evidence of Plaintiff's subjective
pain and symptoms due to his obesity. The ALJ subsequently
classified Plaintiff's RFC to perform medium work, which renders
him "capable of performing all of his past relevant jobs, both as
actually and generally performed in the national economy." (Id. at
PageID 58.) The ALJ also stated that "[i]n addition to past
relevant work, there are other jobs that exist in significant
numbers in the national economy that the [Plaintiff] also can
perform, considering the [Plaintiff's] age, education, work
experience, and residual functional capacity[.]" (Id.)

Plaintiff's burden requires him to specify symptoms that his
obesity exacerbated, but he has not sufficiently done so. His
allegations of symptoms are neither entirely consistent with
medical evidence and other evidence in the record, nor has he
proposed additional limitations that were missing from the ALJ's
findings. Plaintiff does not dispute any other aspect of the ALJ's
decision. As such, because Plaintiff has failed to meet this burden
and because the ALJ explicitly considered how Plaintiff's obesity

- 16 -

impacted his other impairments and reduced his RFC, the ALJ's determination was supported by substantial evidence.

### III. CONCLUSION

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

September 15, 2025
_____
Date

- 17 -